### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

| | | |
|---|---|---|
| In re: | * | |
| **VINCENT L. ABELL,** | * | Case No.  13-13847-PM |
| | | (Chapter 11) |
| Debtor. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MOTION OF CHAPTER 11 TRUSTEE FOR ORDERS (A)(I) APPROVING BIDDING PROCEDURES FOR THE SALE OF PROPERTIES, (II) APPROVING FORM OF PURCHASE AGREEMENTS, (III) SCHEDULING HEARING TO CONSIDER THE SALE OF THE PROPERTIES, (IV) APPROVING FORM AND MANNER OF NOTICE OF SALE, AND (V) GRANTING RELATED RELIEF; AND (B)(I) AUTHORIZING THE SALE OF THE PROPERTIES FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, <u>AND (II) GRANTING RELATED RELIEF</u>

Roger Schlossberg, Chapter 11 Trustee for Vincent L. Abell (the "Trustee"), by undersigned counsel, submits this motion (the "Sale Motion"), pursuant to §§105(a) and 363 of the Bankruptcy Code, and Fed. R. Bankr. P. 2002, 6004, and 9014, for entry of two orders: (A) the first, substantially in the form attached hereto as *Exhibit 1* (the "Bidding Procedures Order"), (i) approving procedures (the "Bidding Procedures"), substantially in the form attached hereto as *Exhibit 2*, with respect to the proposed sale (the "Sale") of real properties listed and described in *Appendix A* attached hereto (the "Properties"), (ii) approving the form of the Purchase Agreements (the "Purchase Agreements")[1], substantially in the form attached hereto as *Exhibit 3*, to be used to solicit and close upon bids from potential purchasers for the Properties in accordance with the Bidding Procedures, (iii) scheduling a hearing (the "Sale Hearing") on the Sale and setting an objection deadline with respect to the Sale, (iv) approving the form and

---

[1] The Trustee seeks approval of two different Purchase Agreements, one for properties located in Maryland and one for Properties located in the District of Columbia.  These form agreements differ only to comply with various local laws that do not apply in one or the other jurisdiction.

manner of notice of the Sale, the Bidding Procedures, and the Sale Hearing (the "Sale Notice"),
substantially in the form attached hereto as _Exhibit 4_, and (v) granting related relief; and (B) the
second, substantially in the form attached hereto as _Exhibit 5_ (the "Sale Order"), (i) authorizing
the Sale of the Properties free and clear of all liens, claims, encumbrances, and interests pursuant
to the Purchase Agreements, and (ii) granting related relief.[2]

As set forth in more detail below, the following is the proposed schedule of dates and
deadlines for which the Trustee seeks this Court's approval, subject to modification:

(a)  Bid Procedures and Related Relief Objection Deadline:
Twenty-one (21) days from the date of completion of
service of the Sale Motion;

(b)  Bid Procedures and Related Relief Hearing: March 4, 2014;

(c)  Bid Deadline: March 18, 2014, at 4:00 p.m. (prevailing
Eastern Time) as the deadline by which all bids for the
Properties must be received pursuant to the Bidding
Procedures;

(d)  Auction: March 20, 2014, at 10:00 a.m. (prevailing Eastern
Time) as the date and time the auction, if one is needed, to
be held at the offices of Shapiro Sher Guinot & Sandler;

(e)  Sale Objection Deadline: March 21, 2014, by 4:00 p.m.
(prevailing Eastern Time); and

(d)  Sale Hearing: March 24, 2014, at 3:00 p.m. (prevailing
Eastern Time).

In support of the Sale Motion, the Trustee represents as follows:

## I. JURISDICTION

1.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157
and 1334. Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a
core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).

---

[2] As noted below, the Trustee does not seek entry of the Sale Order until after the Sale Hearing has
occurred.

2.      The statutory basis for the relief requested herein are Bankruptcy Code §§ 105(a) and 363, as supplemented by Fed. R. Bankr. P. 2002, 6004, and 9014 and Local Bankruptcy Rules 2002-1 and 6004-1.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A.  Background of the Debtor, the Trustee, and the Properties

3.      On March 5, 2013, Vincent L. Abell (the "Debtor") filed a Voluntary Petition pursuant to Chapter 11 of the Bankruptcy Code.

4.      On September 19, 2013, the Court entered an Order approving the appointment of Roger Schlossberg as Trustee (the "Trustee") for the Debtor.  The Trustee has accepted that appointment, has qualified and is acting in that capacity.

5.      Prior to the Petition Date, the Debtor owned and operated, either individually or through various entities, numerous residential properties.[3]  The Trustee is administering these rental properties for the benefit of the Debtor's bankruptcy estate and creditors thereof.  As permitted by the Court's Order entered December 9, 2013 [Dkt. No. 318], the Trustee has employed A & G Realty Partners, LLC ("A&G") and Long & Foster Real Estate, Inc. ("Long & Foster") (collectively the "Consultants"), to provide real estate consulting and advisory services to the Trustee in connection with the disposition of the aforesaid properties.

6.      The following properties (the "Properties"), as more fully described in *Appendix A* attached hereto, are the subject of the instant Sale Motion:

    a.   1776 Lyman Pl., NE, Washington, DC  20002

    b.   108 Q St., NW, Washington, DC  20001

---

[3] At this point in the Trustee's investigation of the Debtor's assets, the Trustee has identified one property rented by the Debtor for non-residential use, 1401 South Carolina Ave., SE, Washington, DC  20003.  Though the written lease agreement for the Property is labeled as a residential lease agreement, it recently came to the attention of the Trustee that the named tenant utilized the Property for religious/worship purposes.

    c.  1401 South Carolina Ave., SE, Washington, DC  20003

    d.  1416 Half St., SW, Washington, DC  20024

    e.  1825 Kilbourne Pl., NW, Washington, DC  20010

    f.  10603 Riva Place, White Plains, MD  20695 (Charles County)

    g.  10802 Old Annapolis Road, Frederick, MD  21701 (Frederick County)

    h.  613 Gresham Pl., NW, Washington, DC  20001

    i.  443 S St., NW, Washington, DC  20001

    j.  1118 50th St., NE, Washington, DC  20019

    k.  3430 23rd St., SE, Washington, DC  20020

    l.  1213 Staples St., NE, Washington, DC  20002

    m.  1258 Penn St., NE, Washington, DC 20002

    n.  1360 Taylor St., NW, Washington, DC  20011

    o.  1635 Varnum Pl., NE, Washington, DC  20017

    p.  3402 Shepherd St., Mount Rainier, MD  20712 (Prince George's County)

    q.  3719 Bay Road, Street, MD  21154 (Harford County)

    r.  4021 Marlboro Pl., NW, Washington, DC  20011

    s.  4428 New Hampshire Ave., NW, Washington, DC  20011

    t.  5312 James Pl., NE, Washington, DC  20019

    u.  6034 Eastern Ave., NE, Washington, DC  20010

    v.  164 Uhland Terr., NE, Washington, DC  20002

    w.  217 20th St., NE, Washington, DC  20002

    x.  636 14th Pl., NE, Washington, DC  20002

    y.  920 Delafield Pl., NW, Washington, DC  20011

z.  1261 Owen Pl., NE, Washington, DC  20002

aa. 1516 Trinidad Ave., NE, Washington, DC  20002

bb. 1925 Valley Terr., SE, Washington, DC  20032

cc. 866 Bellevue Circle, SE, Washington, DC  20032

dd.  1304 S Street, SE, Washington, DC 20020

7.    As discussed herein and in the attachments hereto, the Trustee reserves all rights to remove, in the exercise of his sound business judgment, any of the Properties from the Sale Motion

8.    Save for the property located at 613 Gresham Pl., NW, Washington, DC  20001 (the "613 Gresham Property") for which title to the property is the name of the Debtor and a third party as tenants in common,  a deed transferring fee simple title to each of the Properties is held in the name of the Debtor as sole grantee.

9.    Despite the foregoing, certain persons have challenged the Debtor's title ownership to certain of the Properties.  The following Properties are presently the subject of proceedings concerning, *inter alia*, the Debtor's fee simple ownership of the respective Property:

a.  4428 New Hampshire Avenue, NW, Washington, DC 20011 - *Reverse Mortgage Solutions, Inc. v. Vincent L. Abell*, *et al*., Adv. Pro. No. 13-00335;

b.  613 Gresham Place, NW, Washington, DC 20001 - *E. Sharon Gomillion v. Vincent Abell, Dennis Dyer, Calvin Baltimore, Phoenix Real Estate LLC, and Modern Management, Inc.*, Superior Court of the District of Columbia (Civil Division), Case No. 2011-CA-007412 R (RP); and

c.  1416 Half Street, SW, Washington, DC 20024 - *Roger Schlossberg, Chapter 11 Trustee for Vincent L. Abell v. Jocelyn Cordice Basnett*, Adv. Pro. No. 14-00056.

10.     The Trustee reserves all rights with respect to title ownership of the Properties and notes that to the extent title to a Property is claimed by another party such as in the aforementioned proceedings, such interest is in *bona fide* dispute.

11.     The following of the Properties are the subject of pending motions for relief from the automatic stay filed by creditors claiming a lien on the respective Property: (1) 164 Uhland Terr, NE, Washington, DC 20002 [Dkt. No. 236]; (2) 217 20th St., NE, Washington, DC 20002 [Dkt. No. 204]; (3) 866 Bellevue Circle, SE, Washington, DC 20032 [Dkt. No. 165]; (4) 1401 South Carolina Ave., SE, Washington, DC 20003 [Dkt. No. 224]; (5) 1516 Trinidad Ave., NE, Washington, DC 20002 [Dkt. No. 205]; (6) 1925 Valley Terrace, SE, Washington, DC 20032 [Dkt. No. 218]; and (7) 1118 50th Street NE, Washington, DC 20011 [Dkt. No. 363]. The Trustee believes, however, that such claimed lienholders will consent to the sale process for which the Trustee seeks approval by this Motion.

### B. Debtor's Proposed Sale of the Properties

12.     The Trustee, in consultation with A&G and Long & Foster, has determined that the best method for maximizing the value of the Debtor's estate is to sell the Properties through an orderly sale and/or auction process.

13.     As more fully set forth in the Trustee's Application to Employ Real Esate Consultants and Advisors [Dkt. No. 306], both A&G and Long & Foster have extensive experience in the disposition of residential real estate, and A&G has extensive expertise with bankruptcy sale and auction processes designed to create the greatest value for the benefit of bankruptcy estate. The Consultants have and will continue extensively marketing the Properties for sale and will conduct the sale/auction process in accordance with the Bidding Procedures described herein that the Trustee seeks the Court to approve.

### III. GROUNDS FOR GRANTING RELIEF ON AN EXPEDITED BASIS

14.     The following factors justify an expedited sale and auction process of the Properties. First, the ability of the Trustee promptly to sell the Properties reduces the costs to the Debtor's estate associated with maintaining, operating, and leasing the Properties, certain of which are vacant.  Second, the vacant Properties are under-utilized and ripe for tenant leasing, and thus highly attractive to a buyer; indeed, the Trustee has refrained from entering into new leases to facilitate a sale. But, the longer those Properties remain vacant, under-utilized and at risk of damage, the more expenses the Trustee will accrue without the commensurate means of paying those expenses.  Further, the Trustee's ability to procure and maintain future insurance coverage on the Properties is severely impaired by the current lack of financial resources of the Debtor's estate.  An expedited sale and auction process for the Properties will alleviate the risks noted above.

### IV. RELIEF REQUESTED

15.     By this Sale Motion, the Trustee seeks the entry of two interrelated orders. First, the Trustee seeks entry of the Bidding Procedures Order, which is designed to: (i) approve the Bidding Procedures; (ii) approve the form of the Purchase Agreements; (iii) schedule the Sale Hearing; (iv) approve the form and manner of notice of the Sale and Sale Hearing; and (v) grant related relief. Second, following the Trustee's selection of the highest and otherwise best offer for the Sale of the Properties, and a Backup Bidder, if applicable, the Trustee seeks entry of the Sale Order, which is designed to: (i) authorize the Sale of the Properties free and clear of all liens, claims, encumbrances, and interests (the "Interests") pursuant to the Purchase Agreement, and (ii) grant related relief.

7

### A.  Approval of Bidding Procedures and Purchase Agreement

16.    The Trustee hereby seeks approval of the Bidding Procedures, which are attached as *Exhibit 2* and summarized below.[4] The Trustee believes these Bidding Procedures will maximize the value of the Properties for the benefit of the Debtor's estate, creditors, and other interested parties. The Bidding Procedures contemplate a sale and auction process pursuant to which bids for the Properties will be subject to higher offers.

### 1.  Bid Deadline

17.    The Consultants will market the Properties and solicit bids. If the Trustee receives more than one offer to purchase any one of the Properties, an auction (the "Auction") can be conducted as set forth below. In order to bid at the Auction, a bidder (the "Bidder" and collectively, the "Bidders") must submit a written bid in the form of the Required Bid Documents (as defined below) no later than **March 18, 2014, at 4:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline"). The original Required Bid Documents must be submitted to: Richard M. Goldberg, Esq., Shapiro Sher Guinot & Sandler, 36 South Charles Street, Suite 2000, Baltimore, MD 21201 (rmg@shapirosher.com), with copies to:

   a.  Roger Schlossberg, 134 W. Washington Street, P.O. Box 4227, Hagerstown, MD 21741;

   b.  Michael Matlat, A&G Realty Partners, LLC, 445 Broadhollow Road Suite 410, Melville, NY 11747, mike@agrealtypartners.com;

   c.  Matt Benson, Long & Foster, 1311 Dolley Madison BLVD, McLean, Va. 22101, Matt.Benson@longandfoster.com; and

   d.  Jeanne M. Crouse, Esq., Office of the United States Trustee, 6305 Ivy Lane, Ste. 600, Greenbelt, MD 20770, Jeanne.M.Crouse@usdoj.gov.

---

[4] To the extent that this summary differs in any way from the terms set forth in the Bidding Procedures attached hereto as *Exhibit 2*, the terms of the Bidding Procedures shall control.

18.     Each Bidder shall be deemed to have acknowledged: (a) that it had an opportunity to view the exterior of the Properties prior to making its offer, and that each such Bidder relied solely upon its own inspection of the Properties in making its offer; and (b) that each Bidder is not relying upon any written or oral statements, representations, or warranties of the Consultants, or the Trustee, their agents or representatives.

## 2.  Reservation of Rights

19.     <u>Private Sale</u>.   In order to maximize the value of the Properties, the Trustee reserves the right prior to the Auction to enter into a Purchase Agreement with a prospective buyer, subject to this Court's approval, and in accordance with Local Rule 6004-1. The entry into such agreement shall be without further notice to any party, other than those parties required to be noticed pursuant to this Sale Motion.

20.     In order to maximize the value of the Properties to the estate, the Trustee may withdraw any or all of the Properties from the Sale prior to or during the Auction. The Trustee reserves the right to reject any and all bids, package bids in any format and obtain higher and better offers for any Properties bid upon.

## 3.  Required Bid Documents

21.     All bids must include the following documents which must be submitted by the Bid Deadline (the "Required Bid Documents" or "Bid Requirements"):

> a.  A written offer, on Bidder's business letterhead, or, if on behalf of Bidder by Bidder's legal counsel, then on Bidder's legal counsel's letterhead, for the purchase of the specific Property or Properties as the case may be. Such written offer must expressly state that the Bidder's offer is irrevocable until the earlier to occur of (i) the Closing (as defined in the Purchase Agreement) or (ii) forty-five (45) days following the Auction (unless such bid is sooner expressly rejected in writing by the Trustee) and that if it is the successful Bidder, Bidder is ready, willing, and able to execute the Purchase Agreement(s) consistent with such successful bids, the forms of which are attached hereto as <u>*Exhibit 3,*</u> together with a black-

lined copy marked to show any changes from the form approved by the Bankruptcy Court.

b. <u>Purchase Price</u>.  Provides for an aggregate purchase price and, if more than one Property is included, an allocation of purchase price on a property-by-property basis and identifies how the purchase price will be paid at closing.

c. In the case of a real estate broker bidding on any specific Property or Properties as the case may be, as agent for a Bidder, the broker must submit the Required Bid Documents together with a letter of authorization on Bidder's letterhead, executed by an authorized agent of the Bidder, stating that (i) Bidder exclusively authorizes broker to submit such offer on behalf of Bidder and that any commission or fee of any type due and payable to such broker as a result of a Sale shall be paid solely by Bidder and Bidder shall indemnify the Trustee and the Consultants in this regard, and (ii) Bidder acknowledges that it will comply with the Bidding Procedures.

d. An executed and fully completed copy of the Purchase Agreement, the form of which is attached hereto as *Exhibit 3*.

e. Written evidence of Bidder's ability, including financial ability, to consummate the Sale without any contingencies to closing: (i) including, but not limited to, federal tax returns for two years and/or a current audited or review financial statement and/or bank account statements; and (ii) any information that the Trustee may reasonably request.

f. <u>Due Diligence</u>.  A written acknowledgement and representation signed by the Bidder or his authorized agent that the Bidder:  (a) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Properties in making its offer; (b) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Properties or the completeness of any information provided in connection therewith or the Auction other than as provided in the Purchase Agreement; and (c) is not entitled to any break-up fee, termination fee, expense reimbursement, or similar type of payment, (d) and by submitting a Purchase Agreement(s), waives, and shall be deemed to waive, the right to pursue a substantial contribution claim under § 503 of title 11 of the United States Code (the "Bankruptcy Code") related in any way to the submission of its bid, the Bidding Procedures, <u>or any earnest money Deposit</u>.

g. <u>Deposit</u>. Includes an earnest money Deposit as provided for in the Purchase Agreement(s) and defined herein in the form of a certified check,

wire transfer, or such other form of a cash equivalent as is reasonably acceptable to the Trustee, or such other form as approved by the Bankruptcy Court.

### 4. Qualified Bids

22.    Unless a Bid Requirement is waived by the Trustee, in his discretion, only Bidders that have complied with the Bid Requirements shall be deemed to have submitted qualified bids ("Qualified Bids"); only such parties shall be eligible to participate in the Auction as Qualified Bidders.

### 5. Deposit Requirement

23.    Each Bidder shall tender a Deposit equal to ten percent (10%) of the bid amount (the "Deposit" or "earnest money Deposit") as required by the Purchase Agreement. The Deposit shall be made by cashier's check payable to "Roger Schlossberg, Chapter 11 Trustee" or such other form of immediately available funds acceptable to the Trustee, in his sole discretion. The Deposit of the second highest and best Bidder (the "Backup Bidder") shall be held in escrow (without interest) in accordance with the terms of the Purchase Agreements until the earlier to occur of: (i) the Closing, and (ii) forty-five (45) days after the Auction. The Trustee shall return the Deposits of all other Bidders within ten (10) business days of the Auction.

24.    In the event the Trustee does not consummate the sale of any of the Properties for any reason (other than the Bidder's failure to consummate the sale), the Trustee's sole obligation and liability shall be to refund the Deposit to the Bidder.

25.    The Sale shall not be deemed to have been completed pursuant to the procedures described herein unless (a) the Bankruptcy Court has approved such Sale at the Sale Hearing, and (b) such proposed transaction is, in fact, consummated.

### 6. The Auction

26.    The Auction shall occur on **March 20, 2014, at 10:00 a.m. (prevailing Eastern Time)**, at the offices of Shapiro Sher Guinot & Sandler, 36 South Charles Street, Suite 2000, Baltimore, Maryland, 21201 on the terms and conditions set forth in the Bidding Procedures. Only Qualified Bids will be considered at the Auction, subject to the Trustee's discretion. All sales, whether at the Auction or a private sale, shall be subject to approval of the Bankruptcy Court.

27.    The terms and procedures governing the Auction are as follows:

a.  Qualified Bidders shall appear at the Auction in person, or through a duly authorized representative who shall have authority to legally bind such Qualified Bidder, unless alternative arrangements are reached with the Trustee and his Professionals.

b.  The Trustee may conduct the Auction, in the manner that he determines, in his reasonable business judgment, will result in aggregate Successful Bid(s) that will maximize the overall value of the Properties to the bankruptcy estate, and may adopt and modify rules for the Auction at the Auction that, in the Trustee's reasonable business judgment, will better promote the goals of the Auction and that are not inconsistent with any of the provisions of the Bidding Procedures Order, the Bankruptcy Code, or any order of the Bankruptcy Court.  All such rules will provide that all participating Qualified Bidders (or their authorized representative) shall be entitled to be present for all bidding and that all material terms of each Qualified Bid will be fully disclosed to all other bidders throughout the entire Auction.  Each bid by a Qualified Bidder at the Auction, if not inconsistent with the provisions of these Bidding Procedures, shall be deemed to constitute a Qualified Bid.

c.  The Trustee will arrange for the actual bidding at the Auction to be recorded.

d.  Qualified Bidders are precluded from engaging in any collusion regarding these Bidding Procedures, the Auction, or any proposed transaction relating to the Properties or any grouping thereof.

e.  Before the start of the Auction, the Professionals will notify all Qualified Bidders of the highest or otherwise best bid (the "Opening Bid") for the Properties, by group, and individually, as determined by the Trustee in consultation with the Professionals.

f.  The Auction will begin with the Opening Bid.

g.  Subsequent to the initial round of bidding, the Auction may continue, in the discretion of the Trustee with one or more subsequent rounds of bidding.  The minimum overbid for any such subsequent rounds shall not be less than $1,000 for a single Property, provided, however, that the Trustee may reduce or raise the incremental amount of subsequent  bids in his discretion with increments for each subsequent round of bidding being announced on the record at the Auction.

h.  All Qualified Bidders shall have the right, at any time, to request that the Trustee announce, subject to any potential new bids, the then-current highest or otherwise best bid for a Property or group of the Properties and, to the extent requested by any Qualified Bidder, use reasonable efforts to clarify any and all questions such Qualified Bidder may have regarding the Trustee's announcement of the then current highest or otherwise best bid(s).

i.  In the Trustee's discretion, all Qualified Bidders shall have the right to propose modifications to their Purchase Agreement(s) at the Auction; provided, however, that any such modifications to a Purchase Agreement(s) on an aggregate basis and viewed in whole, shall not be less favorable to the Trustee (from his perspective), and that any such modification shall not vitiate any tenant rights.

j.  Upon conclusion of the bidding, the Auction shall be closed subject to the terms contained in these Bidding Procedures, except as otherwise provided for herein or by order of the Bankruptcy Court.  The Trustee shall, as soon as practicable thereafter identify and determine in his reasonable business judgment the highest or otherwise best Qualified Bid for the Properties or any grouping thereof or individual Properties (the "Successful Bid" or "Successful Bids") and the entity or entities submitting such Successful Bid(s) (the "Successful Bidder(s)").  In making this decision, the Trustee may consider, among other things, the amount of the purchase price, the form of consideration being offered, the Qualified Bidder(s)' ability to close a transaction and the timing thereof, the type and nature of the Purchase Agreement(s), and the net benefit to the Debtor's bankruptcy estate.  The Trustee will advise the Qualified Bidders of the conclusions he makes, and require the Successful Bidder to deliver its Purchase Agreement.

k.  The Trustee shall determine which Qualified Bid(s), if any, is the next highest or otherwise best Qualified Bid and designate such Qualified Bid as the "Backup Bid" which shall proceed to closing in the event the Successful Bidder(s) fails to consummate the Successful Bid(s).  A Qualified Bidder that submits the Qualified Bid that is designated as the Backup Bid is the "Backup Bidder."

l.  The Successful Bidder(s) and Backup Bidder(s) shall increase their respective earnest money Deposit within one (1) business day after the conclusion of the Auction so that the amount of such deposit is equal to fifteen percent (15%) of its Successful Bid or Backup Bid, as applicable.

13

m. Notwithstanding anything to the contrary contained herein, if the Trustee determines that no acceptance of a Qualified Bid would be in the best interest of the estate and its creditors, the Trustee may terminate the Auction without designating any Successful Bidders or Backup Bidders.

n. At the conclusion of the Auction, any and all key terms of the Successful Bid and the Backup Bid shall be recited on the record to ensure the accuracy thereof and to aid in the final documentation of the sale.

o. Following the conclusion of the Auction or at any point thereafter, as the case may be, the Trustee may resume bidding pursuant to such procedures that he determines in his discretion, or otherwise engage in negotiations for the sale of discrete assets not subject to the Successful Bid(s) or Backup Bid(s).  The Court may consider approval of the sale of such discrete assets at the Sale Hearing, or a date shortly thereafter.

p. All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction and the construction and enforcement of the Bidding Procedures and the Successful Bid(s) and Backup Bid(s), as applicable.

### 7. The Closing

28.     Except as otherwise provided in a written offer that has been accepted by the Trustee, the closing of the Sale shall take place at the offices of Shapiro Sher Guinot & Sandler, P.A. within one (1) business day following the entry of the Sale Order (the "Closing"). The Sale Hearing before the Bankruptcy Court to approve the Sale is requested herein to be scheduled for March 24, 2014, at 3:00 p.m. (prevailing Eastern Time), subject to the order of this Court.

29.     With respect to the Closing, time of performance by the Successful Bidder(s) is of the essence. Upon failure to consummate the Sale, because of a breach or failure on the part of the Successful Bidder(s), the Trustee shall retain the Deposit for any Property as liquidated damages as well as the right to pursue any available judicial relief, and the next highest or otherwise best Qualified Bidder, as disclosed at the Auction and Sale Hearing, shall be deemed the Successful Bidder and shall consummate the Sale without further order of the Court.

30. The balance of the purchase price of the respective Property shall be paid by the Successful Bidder (or Backup Bidder) by wire transfer or an endorsed bank or certified check at the Closing.

## 8. Miscellaneous Terms of Sale

31. The Sale shall be without representations or warranties of any kind, nature, or description by the Trustee, its agents, or its representatives. The Properties shall be transferred "as is" and "where is."

32. The Sale shall be subject to any existing rights of any lawful tenant(s) residing in a Property and the Properties shall be transferred subject to any such rights.

33. All of the Debtor's rights, title, and interest in and to each Property shall be assigned and sold pursuant to § 363(f) of the Bankruptcy Code free and clear of all Interests, which shall attach to the net proceeds received by the Trustee as a result of the Sale with the same nature, extent, validity and priority as of the Petition Date, subject to further order of the Bankruptcy Court.

34. Unless otherwise indicated by the Trustee at the Auction, the Sale shall not include personal property, inventory, trade fixtures, or other furnishings or equipment located on any of the Properties, whether or not owned by the Trustee. The Trustee reserves the right either to sell such personal property to the Successful Bidder (or to any other party), to abandon any or all of the personal property, or to make such other arrangements as may be appropriate.

35. All sales, transfer and recording taxes, stamp taxes or similar taxes, if any, relating to the Sale or the sale of personal property of the Trustee in connection therewith shall be the sole responsibility of the Successful Bidder and shall be paid at the Closing.

36. The Trustee, at or before the Auction, may impose or modify the terms and

conditions of the Sale and Auction and bidding process as he determines to be in the best interest of the Debtor's estate, creditors, and other parties in interest.

### B.      Notice of Sale and Sale Hearing

37.      Subject to the Court's calendar, the Trustee requests that the Court schedule the Sale Hearing on **March 24, 2014, at 3:00 p.m. (prevailing Eastern Time).**

38.      The Trustee requests that the Court order that Objections to approval of the Sale of the Property must be in writing, state the basis of such objection with specificity, and be filed with this Court and served so as to be received on or before **March 21, 2014 by 4:00 pm** (prevailing Eastern Time) by Richard M. Goldberg, Esq., SHAPIRO SHER GUINOT & SANDLER, 36 South Charles Street, Suite 2000, Baltimore, MD 21201 (rmg@shapirosher.com), with copies to:

    a.  Roger Schlossberg 134 W. Washington Street, P.O. Box 4227, Hagerstown, MD 21741 and

    b.  Jeanne M. Crouse, Esq., Office of the United States Trustee, 6305 Ivy Lane, Ste. 600, Greenbelt, MD 20770, Jeanne.M.Crouse@usdoj.gov.

39.      The Trustee requests that the Court approve the form and manner of notice of the Sale and the Sale Hearing, substantially in the form attached hereto as _Exhibit 4_ (the "Sale Notice").  Within two (2) business days of the entry of the Bidding Procedures Order, the Trustee will serve the Sale Notice and any exhibits attached thereto on the following parties, and their counsel, if known, (collectively, the "Notice Parties") by first class mail, postage prepaid[5]:

    a.  The Office of the United States Trustee;

    b.  All entities known to have expressed a bona fide interest in acquiring any of the Properties;

    c.  All entities that have filed a lift stay motion with respect to any of the Properties;

---

[5] As discussed _infra_, the Trustee shall serve the Sale Motion and exhibits attached hereto upon the same parties and in the same manner.

    d.   Federal, state, and local taxing authorities with jurisdiction over the Trustee and the Properties;

    e.   All known parties asserting liens of record on the Properties as of the Petition Date;

    f.   All other parties that have requested notice pursuant to Fed. R. Bankr. P. 2002 as of the date prior to the date of entry of the Sale Procedures Order; and

    g.   Any known tenants of the Property who are or claim to be parties to a lease for such Property, and upon the address of each of the Properties noting "[NAME OF ANY KNOWN TENANT] OR CURRENT RESIDENT"

40.    After the Trustee serves the Sale Notice as described *supra*, the Trustee shall promptly file a certificate of service with the Court certifying the completion of such service.

41.    The Sale Notice will provide that any party that has not received a copy of the Sale Motion or the Bidding Procedures Order that wishes to obtain a copy of such documents may make such a request, in writing, to Richard M. Goldberg, Esq., SHAPIRO SHER GUINOT & SANDLER, 36 South Charles Street, Suite 2000, Baltimore, MD 21201 (rmg@shapirosher.com).

42.    At the Sale Hearing, the Trustee will seek this Court's approval of the Sale of the Properties free and clear of all Interests, which shall attach to the net proceeds received by the Trustee as a result of the Sale with the same nature, extent, validity and priority that they had as of the petition date, subject to further order of the Bankruptcy Court. The Trustee will present additional evidence, as necessary, at the Sale Hearing and submit that the Sale(s) is fair, reasonable, and in the best interest of the Debtor's estate.

### C.    Notice to Tenants

43.    As reflected in the list and description of the Properties attached hereto as *Appendix A*, the Trustee's present investigation indicates that certain of the Properties may be subject to a residential lease agreement and/or are occupied by one or more tenants who may claim that a lease agreement with the Debtor exists.

17

44.    In abundance of caution and in order to apprise any current tenants of this Sale Motion and the relief requested herein, the Trustee shall serve the Sale Motion by first class mail, postage prepaid, on each Property listed in *Appendix A* (these parties are included in the Notice Parties).  In addition, the Sale Notice, attached hereto as *Exhibit 4*, shall be served by the Trustee within two (2) business days following the entry of the proposed Bidding Procedures Order in the same manner.  To the extent any of the Properties contain more than one rental unit, the Trustee shall also post the Sale Notice in a common and accessible area of the Property within two business days following the entry of the proposed Bidding Procedures Orders.  The Trustee's transfer of any of the Properties that may be subject to a lease will be transferred subject to whatever such tenant's rights may be and thereafter borne by the buyer, as set forth in the Purchase Agreement(s).

### D.    Notice Required by the District of Columbia Code[6]

45.    As reflected in *Appendix A*, certain of the Properties are physically situated in the District of Columbia.  The District of Columbia's Rental Housing Conversion and Sale Act (the "Sale Act") provides, *inter alia*, a tenant with the "opportunity to purchase [a housing accommodation][7]" as well as certain notification rights before the owner may sell the accommodation.  D.C. Code § 42-3404.02(a).  By statutory exemption, a sale of a property through a "bankruptcy sale" does not qualify as a "sale" within the meaning of the Sale Act.  *See id.* § 42-3404.02(c)(2)(E).  Further, an owner of a property to be sold through a "bankruptcy sale" is not required to provide a tenant with written notice of the bankruptcy sale (*i.e.*, "Notice

---

[6] There is no Maryland-law counterpart to the District of Columbia Sale Act.  The only potentially comparable statutory scheme is the Maryland Condominium Act, Md. Code Ann., Real Prop. § 11-101, *et seq.*, which does not require any particular notice under the present circumstances.

[7] "Housing accommodation" means "a structure in the District of Columbia containing 1 or more rental units and the appurtenant land."  D.C. Code § 42-3401.03(11).

of Transfer") so long as the owner files a Notice of Transfer with the Mayor. *Id.* § 42-3404.02(d)(1)(B). The Notice of Transfer must be filed with the Mayor or designated District of Columbia government body "at least 90 days prior to the proposed date of transfer." *Id.* § 42-3404.02(d)(2).

46.    Because those of the Properties physically located in the District of Columbia are property of the Debtor's bankruptcy estate and are sought to be sold by the Trustee pursuant to, *inter alia*, § 363 of the Bankruptcy Code, the disposition of such Properties requested in the Sale Motion is a "bankruptcy sale" within the meaning of § 42-3404.02(c)(2)(E) of the D.C. Code. As a result, the Trustee has no obligation under the Sale Act to provide notice to any tenant. However, as discussed *supra*, the Trustee will make all reasonable efforts to provide notice to any tenants of the Sale Motion and the Sale Notice.

47.    As required by, *inter alia*, D.C. Code § 42-3404.02(d)(1)(B) and applicable regulations, the Trustee has served a Notice of Transfer of the Properties on the D.C. Department of Housing and Community Development, Rental Conversion and Sale Division, in the form prescribed by the District of Columbia by commercial overnight courier with proof of delivery. A copy of the Notice of Transfer is attached hereto as *Exhibit 6*.[8] The Trustee may seek, at the Sale Hearing, to request the Court to reduce the ninety (90) day notice period otherwise required by the Sale Act on grounds of federal preemption. *See Md. Consumer Prot. Div. v. Evans Distrib. & Jewelers, Inc. (In re Evans Distrib. & Jewelers, Inc.)*, No. DKC 95-2640 (D. Md. Oct. 3, 1996), attached hereto as *Exhibit 7*.

---

[8] As represented in the Notice of Transfer, the Trustee shall serve a copy of this Sale Motion on the D.C. Department of Housing and Community Development, Rental Conversion and Sale Division promptly after filing with the Court.

## V.    AUTHORITY FOR REQUESTED RELIEF

### A.    The Proposed Sale Satisfies § 363(b) of the Bankruptcy Code

48.    Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a trustee, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). This provision does not explicitly set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan. However, courts have required that the decision to sell assets outside the ordinary course of business be based upon the sound business judgment of the trustee.  *See* 3 COLLIER ON BANKRUPTCY ¶ 363.02[4] (16th ed. 2013); *In re Modanlo*, 412 B.R. 715, 732 (Bankr. D. Md. 2006) *subsequently aff'd*, 266 F. App'x 272 (4th Cir. 2008); *In re Fischer*, 03-13704, 2010 WL 2746329, at *10 (Bankr. D. Md. July 9, 2010); *Fulton State Bank v. Schipper* (*In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991) (requiring "articulated business justification" for sale, adequate notice, and the availability of a hearing to approve sale under § 363(b)); *see also Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996).

49.    The Trustee submits that the decision to proceed with the Bidding Procedures and the Sale is based upon sound business judgment and should be approved. A trustee's showing of a sound business purpose need not be unduly exhaustive but, rather, a trustee is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).

50.    Section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers to administer a case under the Bankruptcy Code. Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the

provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Provided that a bankruptcy court does not employ its equitable powers in a manner that is divorced from the other provisions of the Bankruptcy Code or to issue orders outside the scope of title 11, the exercise of § 105(a) power is appropriate. *See Sindram v. U.S. Marshals Serv. (In re Sindram)*, 08-00559, 2010 WL 1611104, at *3 n.5 (Bankr. D.D.C. Apr. 20, 2010).

51.    Pursuant to § 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets. *See, e.g., Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Final Analysis, Inc.*, 389 B.R. 449, 462 (Bankr. D. Md. 2008) ("Section 105(a) bestows broad equitable powers to enter any order or otherwise take action to curb abuses of the bankruptcy process and to preserve the integrity of the Bankruptcy Court.").

52.    The Trustee submits that ample business justification exists to sell the Properties pursuant to the Bidding Procedures. The prompt sale of the Properties presents the best opportunity to maximize its value for the Debtor's estate. In addition, the Trustee believes that the Bidding Procedures are the best method by which it can obtain the best price for the Properties and provide interested parties with accurate and reasonable notice of the Sale. The Bidding Procedures will allow the Trustee to conduct the sale process and Auction in a controlled, fair and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to close a transaction.  This process will thus increase the likelihood that the Trustee will receive the best possible consideration for the Properties by helping ensure a competitive and fair bidding process.

53.     In addition, the notice procedures described in this Motion and in the Bidding Procedures Order are intended to adequately advise all potentially interested parties and parties who may be affected by the sales, including those who have previously expressed an interest in purchasing the Properties.

54.     The Trustee has articulated ample business justification for the Sale and, through the measures and safeguards proposed herein, has guaranteed adequate notice to all creditors, and the availability of a hearing on the Sale.

### B.      The Proposed Sale Satisfies § 363(f) of the Code

55.     Section 363(f) of the Bankruptcy Code authorizes a trustee to sell property of the estate outside the ordinary course of business free and clear of "any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

> (i)      applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (ii)     such entity consents;
>
> (iii)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (iv)    such interest is in bona fide dispute; or
>
> (v)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

See 11 U.S.C. § 363(f); In re Collins, 180 B.R. 447, 450 (Bankr. E.D. Va. 1995) (Section 363(f) is phrased in the disjunctive, such that only one of the enumerated conditions must be met in order for the Court to approve the proposed sale."); In re Byrd, 04-35620-TJC, 2007 WL 1485441, at *14 (Bankr. D. Md. May 18, 2007) aff'd sub nom. Byrd v. Hoffman, 417 B.R. 320 (D. Md. 2008) aff'd sub nom. In re Byrd, 331 F. App'x 212 (4th Cir. 2009).

56.     As provided in the list and description of the Properties attached hereto as *Appendix A*, certain Interests are asserted against certain of the Properties.  The Trustee proposes to sell the Properties free and clear of these and any other Interests pursuant to § 363(f), with such Interests to transfer and attach to the net proceeds of the Sale with the same validity, priority, extent, and effect that such Interests had immediately prior to Closing.  As discussed herein and reflected in the Purchase Agreements, the Properties will be sold subject to any rights of any existing lawful tenants.

57.     At the Sale Hearing, the Trustee will demonstrate that one or more of the disjunctive elements of § 363(f) have been met, such that the Sale should be approved free and clear of all Interests.

### C.     The Proposed Sale of 613 Gresham Property Satisfies § 363(h)

58.      Section 363(h) of the Bankruptcy Code provides that notwithstanding § 363(f), a trustee may sell "both the estate's interest, under [§ 363(b)], and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as tenant in common" if:

> (1)    partition in kind of such property among the estate and such co-owners is impracticable;
>
> (2)    sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the Interests of such co-owners;
>
> (3)    the benefit to the estate of a sale of such property free of the Interests of co-owners outweighs the detriment, if any, to such co-owners; and
>
> (4)    such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h).

59.     Section 363(h) provides a trustee with the ability to realize the value of a debtor's interest in jointly held property by permitting the trustee to liquidate such property upon satisfaction of the four aforesaid elements. *See In re Ginn*, 186 B.R. 898, 902 (Bankr. D. Md. 1995).

60.     As discussed *supra*, the 613 Gresham Property appears to be owned by the Debtor and Dennis J. Dyer ("Dyer") as tenants in common.[9]  The Trustee submits that the elements of § 363(h) are satisfied and therefore proposes to sell both the Debtor's and Dyer's interest in the 613 Gresham Property.   Preliminarily, the fourth element is satisfied because the 613 Gresham Property is not used in the production or sale of electric energy or of natural or synthetic gas for heat, light, or power.   As to the first element, the 613 Gresham Property is a single family household so that "there is no practicable manner of partition other than a sale and division of the proceeds." *In re Shaw*, 09-219, 2010 WL 128383, at *6 (Bankr. N.D.W. Va. Jan. 11, 2010) (quoting *Neylon v. Addario* (*In re Addario*), 53 B.R. 335, 338 (Bankr. D. Mass. 1985)).  As to the second element, the Trustee submits that selling the Debtor's undivided interest in a single family residence will have negligible value and the amount realized from such a sale by the estate would be less than a sale of the 613 Gresham Property free of Dyer's interest, if any. *See id.*  Lastly, the Trustee submits the third element is satisfied because Dyer will receive the value of his interest, if any, in such property as a result of a sale.

61.     At the Sale Hearing, the Trustee will demonstrate that the four elements of § 363(h) have been met, such that the Sale should be approved free and clear of Dyer's interest, if any, in the 613 Gresham Property.

---

[9] Notwithstanding any sale, the Trustee reserves all rights and causes of action he may have against Dennis J. Dyer in connection with his claimed title ownership interest in the 613 Gresham Property.

### D. The Sale is Proposed in Good Faith and any
### Purchaser is Entitled to the Protections of § 363(m).

62.     Section 363(m) of the Bankruptcy Code provides for certain protections to be

provided to good faith purchasers of assets from debtors pursuant to § 363(b).  Section 363(m)

states:

> The reversal or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease of property
> does not affect the validity of a sale or lease under such
> authorization to an entity that purchased or leased such property in
> good faith, whether or not such entity knew of the pendency of the
> appeal, unless such authorization and such sale or lease were
> stayed pending appeal.

11 U.S.C. § 363(m).

63.     Thus, where the purchase of assets is in good faith, § 363(m) protects parties from

the consequences of the reversal or modification of an authorization of sale. While the

Bankruptcy Code does not define "good faith", the Fourth Circuit has held that a good faith

purchaser is "one who purchases the assets for value, in good faith, and without notice of adverse

claims."  *Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985) (quoting *In re Rock Indus.*

*Mach. Corp.*, 572 F.2d 1195, 1197 (7th Cir. 1978)).   To constitute lack of good faith, a

purchaser's conduct in connection with the sale must usually amount to "fraud, collusion

between the purchaser and other bidders or the trustee or an attempt to take grossly unfair

advantage of other bidders."  *Id.* at 1024 (citing *In re Rock Indus.*, 572 F.2d at 1198); *In re Xact*

*Telesolutions, Inc.*, CIV.A. DKC 2005-1230, 2006 WL 66665, at *5 (D. Md. Jan. 10, 2006).

Due to the absence of a bright line test for good faith, the determination is based on the facts of

each case, concentrating on the "integrity of [an actor's] conduct during the sale proceedings." *In*

*re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting *In re Rock Indus.*, 572 F.2d

at 1198).

64.     The Trustee requests that the Court find at the Sale Hearing that the Successful Bidder(s) (and any proposed Backup Bidder(s)) is entitled to the protections of a good faith purchaser under § 363(m).  The Bidding Procedures are drafted to ensure that the Properties are sold only after the conclusion of a competitive bidding process open to all interested and capable purchasers. The bidding process bears the hallmarks of an arm's-length sale and the eventual Successful Bidder(s) should be afforded the protections of a good faith purchaser.  There is no evidence of fraud or collusion in the terms of the Bidding Procedures. At present time, no known potential bidder is an insider of the Debtor, as that term is defined in § 101(31) of the Bankruptcy Code, and all negotiations have been and will continue to be conducted on an arm's-length, good faith basis. With respect to the potential bidders, the Bidding Procedures are designed to ensure that no party is able to exert undue influence over the process.

### E. Waiver of Stays Imposed by Bankruptcy Rules 6004(h) and 6006(d).

65.     The Trustee requests that the Sale Order be made effective immediately by providing that the stays under Bankruptcy Rules 6004(h) and 6006(d) are waived and inapplicable with respect to the sale of the Property.  The Bidding Procedures provide for a sale process that includes solicitation of potential purchasers and a due diligence period followed by competitive bidding.  Under the scheduled outlined in the Bidding Procedures, closing is to take place shortly following approval of the Sale.

66.     Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should order otherwise and eliminate or reduce the fourteen (14) day stay period, *Collier on Bankruptcy* suggests that the fourteen (14) day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 COLLIER ON BANKRUPTCY ¶ 6004.11, 6006.4 (16th ed.

2013).  Waiver of these stays will allow the Sale Order approving this Sale Motion to become effective immediately upon entry on the Court's docket so the Trustee can promptly complete the sale process outlined in the Bidding Procedures.

## VII. NOTICE

67.     Notice of this Motion will be given to the Notice Parties and to such other parties as identified herein.

68.     As stated *supra*, the Trustee shall serve the Sale Motion on the Notice Parties promptly after filing and requests that the deadline for Objections to the relief requested in the Bidding Procedures Order, including approval of the Bidding Procedures, Purchase Agreement, and the form and manner of Notice of the Sale and Sale Hearing be set for twenty-one (21) days after service by 4:00 pm (prevailing Eastern Time); and (ii) schedule a hearing on the relief requested in the Bidding Procedures Order on **March 4, 2014.**

69.     In addition, the Sale Notice, attached hereto as *Exhibit 4*, shall be served by the Trustee within two (2) business days following the entry of the proposed Bidding Procedures Orders on the same parties, and their counsel, if known, as noted above.

70.     Further, as discussed herein, the Sale Motion shall be served on D.C. Department of Housing and Community Development, Rental Conversion and Sale Division.

71.     In light of the nature of the relief requested, the Trustee submits that no further notice is required.

WHEREFORE, the Trustee respectfully requests: (a) entry of the proposed Bidding Procedures Order, substantially in the form attached hereto; (b) entry of the Sale Order; and (c) such other and further relief as the Court deems just and proper.

Dated:  February 6, 2014

/s/  Richard M. Goldberg
Richard M. Goldberg, Bar No. 07994
rmg@shapirosher.com
Anastasia L. McCusker, Bar No. 29533
alm@shapirosher.com
Shapiro Sher Guinot & Sandler
36 S. Charles Street, 20th Fl.
Baltimore, MD 21201
410-385-4274
*Attorneys for Roger Schlossberg, Chapter 11 Trustee*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY on this 6th day of February, 2014, copies of the foregoing were served on the parties listed below, the Notice Parties as defined herein, and all parties on the Court's official List of Creditors by first-class mail and, if said parties are registered CM/ECF participants and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party, by electronic transmission.

Philip James McNutt, Esq.
Hughes & Bentzen, PLLC
1100 Connecticut Avenue, N.W., Ste. 340
Washington, DC 20036

Randell C. Ogg, Esq.
1150 Connecticut Ave., NW, 9th Fl.
Washington, DC  20036

Michael Gregg Morin, Esq.
PO Box 778
Severn, MD  21144-0778

Jeanne M. Crouse, Esq.
Office of the United States Trustee
6305 Ivy Lane, Ste. 600
Greenbelt, MD 20770

Roger Schlossberg, Trustee
134 W. Washington Street
P.O. Box 4227
Hagerstown, MD 21741

Attached Service Lists.


/s/  Richard M. Goldberg
Richard M. Goldberg